Ms. Booth, are you prepared to go forward? Yes, I am. Thank you. Please proceed then. If it pleases the Court, Mr. Gaeta presents the question of the meaning of the word noted as used within Section 38 U.S.C. 1111. In Mr. Gaeta's view, the word noted requires or means a diagnosis of a defect made at the time of the examination for entrance into service and recorded in the medical examination report. This definition is consistent with the statute which states that the veteran will be presumed to be in sound condition except for defects, infirmities, disorders, which are noted at the time of the exam. The Secretary's regulation at 3.304b essentially parrots that language with the two clarifications which actually support Mr. Gaeta's view. What legal standard do you think the Veterans Court adopted that's incorrect? The Veterans Court did not review the question of the correct interpretation. It instead reviewed the Board's fact finding and agreed that there was no error in the Board's findings of fact. Let me, I guess, ask this question and then just correct my various assumptions. I took it from your brief that you have your legal interpretation, the legal standard. And as you know, that's pretty much all we get to talk about is legal standards. It has two parts. One, that what has to be recorded is a diagnosis. And second, that what has to be recorded is a then current condition, not past. Yes. Tell me why the following is not true. As to the first, there has to be a diagnosis. You didn't make that argument to the Board, to the Veterans Court. And as to the currency, not that it's current as of the time of entry into service, the Veterans Court not only didn't disagree with that, but indicated that it agreed that the past is not the same as the present. So if you put those two things together, what preserved legal issue is in front of us? The question then, Your Honor, is how do you determine? The Court found that there was, it affirmed the Board's finding that there was a notation of a defect. So the question is then what does that notation constitute? The currency, and that I think is an interpretation of what does notation mean as used in the law. The currency, I think, is very clear because it's suggested by the statute which requires. I'm not suggesting that there's any doubt that what has to be, I'm using the word recorded to avoid the regulatory term. What has to be recorded in order to be a qualifying notation is some condition that's current as of the time of entry into service. But my understanding is the Veterans Court agreed with that. And so what's left is a possible interpretation of the particulars of this case, whether the observations about treatment by the Brooklyn psychiatrist or something were or not current, but we don't get to decide application of law to fact. Correct, correct. The issue is preserved for this Court because there is a total absence of any evidence of a defect at the time of examination, at the time of examination, of course, supported by the regulation which rules out history as constituting a notation. Did you make an argument to the Veterans Court that a diagnosis had to be written down something distinct from the, I don't even remember, either the statutory or the regulatory phrases, defect something, it's a three-word phrase, defect something something. Defect infirmity or disorder, I believe. Yes. I am sure that we specifically asserted that. What we argued, Your Honor, was that Section 1111 requires that there actually be a defect at the time, a defect recorded within the report of medical examination. Now that's the actual statutory language though, defect, right? Correct. Okay, so you didn't say something beyond that? For example, saying it had to be a diagnosis? The Board relied on a finding that the word holdover constituted a defect. What we argued was that holdover was not a defect, that it did not indicate a condition or a disability, and that the word C, consultation sheet, which was the other item that the Board and the Court cited to, those words by themselves were not a defect as defined by the Quirin and the Winn cases at the CABC, and those cases held that a defect amounts to or arises from an injury. It was the absence of any finding, and whether we call it a diagnosis or a detection or just a finding, it was the absence of that finding of a defect that is fatal to the notation. If you look at the regulations, just take the regulations as a given, is their use of noted ambiguous? Their use of noted, Your Honor, is identical to the statute's use of noted, noted with the exception, as I indicated, that it makes two clarifications, that... A history of pre-service existence of conditions recorded. Right, right. So is your answer, it's not ambiguous or it is ambiguous? Well, in my view it is not ambiguous, but if it is, it has the same ambiguity as the statute does, because the regulation does not expand on what notation means, other than to add those two clarifications about timing and clarifying that it must actually be recorded. But it doesn't otherwise explain what a notation is. So if the regulation is ambiguous, the statute is too, because it's the same language. You started your answer to me with the words, in my view, the regulation is not ambiguous. So you can pretty much stop there. Exactly right. Unless you're arguing against your own view. No, the statute is not ambiguous. In my view, because the statute adopts the same language as the regulation, that does not make the regulation ambiguous, but rather the question is, is the statute ambiguous? And if the statute is ambiguous, then under Brown v. Gardner, interpretive doubt would be extended to the veteran. I am assuming, Your Honor, that you're referring to our deference and whether the Secretary is entitled to deference that his view... Don't assume anything. I just asked you a question. That assumption aside, then, I would continue that with respect... My question was, is the regulation ambiguous? And you said, in my view, no. Correct. Correct, Your Honor. So are you pressing an argument here for a difference between the defect infirmity disorder on one hand and a diagnosis on the other? No, Your Honor. I think they go hand in hand, and I don't think it's particularly important whether we use the term diagnosis or, as the government prefers in its brief, detection, or whether we would just generically say finding. It still requires some kind of recording of a defect, which the Veterans Court has stated amounts to or arises from an injury. I'm really struggling with this because it doesn't seem as if you have an interpretation legal issue for us. Instead, you're asking us to look at the record and look at the court's findings below and see it's an application of law to fact, which is something we're not supposed to do. So what is the legal issue that you're asking us to review? Your Honor, this court has held in the Walter case and also in Akers v. Shinseki that if there is a total absence of evidence to meet the legal standard, not the sufficiency of the evidence that's there, but is there a total absence of evidence to meet the legal standard, then this court has jurisdiction to review, as a matter of law, what that legal standard is. That implicates review of what the legal standard is. That's what we've presented here. So your view is that we should look at the 42 holdover and the comments that are made on the consultation sheet and understand that to be a total lack of evidence, as opposed to the court looking at that evidence and thinking it's sufficient. The question is whether any of the evidence that the court cited to relies upon, does it meet the legal standard in any way? Not is it sufficient to meet the legal standard, but is sufficiency in fact, as the Walter case addressed, but rather what is the legal standard? Does that evidence come within the scope of the statutory definition or the statutory meaning of notation? It sounds like application of law to fact to me. Well, Your Honor, I guess put differently, what does notation mean? What does it require? How do we independently, how does VA or the Veterans Court look at the evidence and conclude whether a legal standard has been met if we don't know what the legal standard is? That's the question here. What is the legal standard? Once we know the legal standard, then it would be a question of application of law to fact, but we don't yet know or we don't have an agreement. That's what Mr. Gaeta challenges is the legal standard for the concept of notation. You're within your rebuttal time, but it's up to you. I would like to reserve. Good morning and may it please the court. Mr. Gaeta's appeal merely challenges the weighing of evidence that is not within this court's jurisdiction. Starting with the jurisdictional defects, there are several here. The argument that Mr. Gaeta made in his opening brief, that there is a legal error that was made below with respect to the term noted as requiring a diagnosis, was not raised below. Now, that would constitute a waiver, as we pointed out in our brief, but it also invites the court to really go and examine the application of law to fact, which the court doesn't have jurisdiction to do. Counsel referred to the Walter case, which is instructive on this point, because in that case, the Federal Circuit noted that even though Mr. Walter was challenging, essentially saying that there's a total absence of evidence would be legally insufficient to meet the requirement to rebut the presumption of connection, of soundness rather, the court found that, in fact, he was simply challenging the sufficiency in fact of the evidence, and the court found that it didn't have jurisdiction to review that. The same is true here, where Mr. Gaeta is asking the court, in essence, to re-review the facts and re-weigh the evidence, which it cannot do. There's also, it's important to recall that we are here on a Q claim, a Q claim being, obviously, a higher pleading standard, as the court noted in its decision in Andre. The veteran has the burden of pointing out a specific allegation of error. That's reflected in the regulations at 20.1404. And it has to have been outcome determinative as well. Well, it certainly has to be outcome determinative, but the absence of this noted equals diagnosis argument being brought here for the first time. On a Q context, that defect is particularly problematic. With respect to the merits, if the court were to reach the merits, it should affirm that, again, a Q claim being a rare and specific error as reflected in 20.1403A, counsel referred to the standard here as being one of the legal standard for noted is some kind of recording. At least that was one of the articulations that counsel made. On this record, it is clear that that standard would have been met. And really getting to the Q claim, what was before the board and what was before the veterans court was the question of whether or not reasonable minds could differ about whether or not this defect was noted at the time of entry. I'm sorry. Are we now talking about whether what was noted was a current as of entry into service condition, or are we now talking about whether what was recorded constitutes a diagnosis? Well, Your Honor, I would agree with your characterization of those. Those are two prongs of the argument that Mr. Geta has raised. But what the board did and what the veterans court looked at was an application of the regulation, which does not require that two-prong analysis. So to the extent that the board – But you transitioned into this piece of your argument by saying, let's now suppose that the question of whether a diagnosis is required is properly in front of you because they argued it, and then what? And then you wanted to say you either have a legal assertion, a diagnosis is not required. That's what I thought you were going to say, but instead you started talking about how there really was one here or something. So I started getting confused. Sure. So, Your Honor, again, assuming we're on the merits stage, the question is whether or not there is a – if there is a requirement of a diagnosis in the term noted, that on the plain face of the statute and the regulation is not consistent with it. Obviously, Congress did not use the term diagnosed. It did not use it. The VA didn't use it in its regulation. Clearly, what Congress did say in using the term noted is there is some need to memorialize. And on this record, what the board looked at and what the Veterans Court looked at was the evidence. But there's no possible doubt that something was written down. The question is, was what was written down the thing that had to be written down for purposes of the statute or the regulation? So what had to be written down? Well, Your Honor, what had to be noted was the defect, infirmity, or disorder. Right. So let's say you had to – what had to be written down to constitute a note, a noting, was a identifiable label for something in the person's body or mind. What was that that was written down about something in Mr. Gaeta's body or mind that was in his body or mind at the time of his entry into service? Well, Your Honor, I'm not sure that I would agree to the extent that that is not the standard that needed to be met. But in any event – Defect, infirmity, or disorder. Yes. Something about his body or mind then and there. Yes, Your Honor. But what the regulation – what the evidence shows is what occurred here was that the medical examiner, when he first examined Mr. Gaeta, indicated this notation of 42, which corresponds to a psychiatric abnormality. And then there was this consultation sheet, which is in the record, which in turn referred to a private physician's examination of Mr. Gaeta. And the private physician's examination of Mr. Gaeta, Dr. Rizzutti, stated that Mr. Gaeta had been under his care for a number of years and was, quote, suffering from essential hypertension and anxiety neuroses. What are you reading from? And I'm reading from page 44 of the appendix. This was a document that was dated October 29, 1963. It was incorporated into the medical examination report prior to entry. And it was part of the record that the board looked at. And I'm going to assume that they either have said or are saying, well, this doesn't actually speak of what was happening on – this is what – yes, November 20th, 1963 of all days. This says, on and off since February of 1961, suffering from. That doesn't – maybe one way their – maybe their point is. It doesn't yet say what his condition was on November 20th, 1963. Well, I would agree with Your Honor. It doesn't say specifically what his condition was on that date. But, again, the question before the board was whether or not there was a clear and unmistakable error. I would point the court's attention to page 21 of the appendix, which is the part of the board's decision in which it examined whether or not there was cue on this record. And what it found is there was, quote, more than a pre-service existence recorded at the time of examination. If you're bound by that fact, then you're – and consistent with the argument that I think counsel is making here today, you are bound by that fact. That is sufficient to meet the terms of the regulation. Again, we're looking at whether it was plausible. Reasonable minds could differ. If reasonable minds can differ, by definition, it's not cue. And so under that heightened standard, once we get into the evidence and we're looking at the examination reports, we're – obviously, we're beyond the court's jurisdiction. But looking at the factual records found below, it's clear that the standard was met. The term noted is really a fact-intensive inquiry in these types of cases. And the board, in the first instance, had the obligation to look at the records that were part of the pre-service examination and determine whether or not that requirement was met. The Verdon case, the Veterans Court's decision in Verdon, is helpful on this point. We cite it in our brief. In that case, the person who was being examined had bunions that were not symptomatic at the time of examination. And yet the Veterans Court found that there was still, based on other evidence that was contemporaneous, sufficient to constitute a notation. And the argument that Mr. Guetta is making, the construction that he's advocating in terms of adopting a diagnosis requirement, would really impose a severe burden on the examiners who are carrying out these examinations during the pre-service examination process. And it is inconsistent with the language in the statute, but also it's just the purpose of the presumption of soundness, which the court explained in Wagner in terms of making sure that the VA does not, without any basis, deny service connection on the basis of some condition being a pre-service condition. I do also want to point out the question on ambiguity. Our position would be that the statute is clear. It's not ambiguous as to whether or not a diagnosis is required. And simply would point out, it doesn't say diagnosis. Even if the term noted were to be considered ambiguous, there would be a basis to defer to the VA's interpretation under our, as this court noted in Reisenstein as well, that the Brown versus Gardner concept of deferring to the veteran does not trump a Chevron type of analysis of deference to the agency as long as it's reasonable. And on that basis, we would submit that the court should dismiss the appeal for lack of jurisdiction or affirm the judgment below. Thank you. Thank you, Your Honor. If I may comment on some of the government's argument. First of all, referring to the Dr. Rizzutti letter, it was dated October 29, 1963. It was not prepared on that date. We don't know what date it was prepared. It's undated. So it's the fact that there's nothing to indicate that it was a current diagnosis. I would also note that Dr. Rizzutti also stated... What about how it said suffering? I think that was the language. Suffering as opposed to suffered. It depends on what date that was written, Your Honor. He may have been suffering from some kind of a nervous disorder at the time the letter was written. He also states he was suffering from hypertension, and that's not noted in the exam either. So it's not a current report. It's not recorded in the examination report. And in any event, it's clearly excluded because it's history. Even if it's a recent history, it is nevertheless history, which the Secretary's own regulation very clearly excludes. Why isn't it reasonable, at least for the... Just focusing on the anxiety neurosis. Reasonable for the Board to have concluded this sufficiently notes a condition as of late November, because this is not the kind of condition that we would expect in the absence of evidence to go away. Go away in any reasonable time from when Dr. Rizzutti's letter was prepared. But we don't, number one, we don't know when Dr. Rizzutti's letter was prepared. We know when it was received, but not when it was prepared. Number two, there is no medical basis to conclude that what Dr. Rizzutti, I believe, either Dr. Rizzutti or the veteran said that his nervous disorder was manifested by stuttering. There is no stuttering noted in this medical examination. So, you know, I don't think there is a medical basis to conclude that a nervous disorder is going to, will not resolve in a short amount of time. In fact, I would note that nervous disorders are not considered by VA to be chronic. So, I think what the letter does, what the agency was, or the Selective Service Examiner was well within his rights to do, was to examine that letter and then having been alerted to the problem, make an additional examination of the veteran. That happened and no findings were made. Wrap it up, Ms. Booth. Yes, Your Honor. The Secretary's efforts to defeat jurisdiction, the Secretary states in his brief that the Board applied the law to the facts and later applied legal standards. Those legal standards are what are at issue here in view of the fact that there is no evidence to support the legal standard if it is construed as Mr. Gatiss admits that it should be, that it's warranted. Thank you, Your Honor. Thank you, counsel. The matter will stand submitted.